**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION AT LAFAYETTE**

| | | |
|---|---|---|
| HENKELS & MCCOY, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 4:12-CV-71-PRC |
| | ) | |
| P&G POWER, LLC, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on Henkels & McCoy, Inc.'s Motion for Summary Judgment

Against Defendant P&G Power, LLC [DE 46], filed by Plaintiff Henkels & McCoy, Inc. on October

15, 2014. Plaintiff Henkels & McCoy, Inc. ("H&M") filed a Complaint against Defendant P&G

Power, LLC ("P&G") on December 10, 2012, alleging breach of contract for P&G's failure to pay

all required union dues for its workers in relation to subcontracted storm repair electrical work

performed by P&G for H&M. P&G filed an Answer on January 31, 2013. P&G has not filed a

response to the instant Motion for Summary Judgment, and the time to do so has passed. The parties

orally agreed on the record to have this case assigned to a United States Magistrate Judge to conduct

all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court

has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c). Because there are no genuine

issues of material fact and H&M is entitled to judgment as a matter of law, the Court grants

summary judgment in favor of Plaintiff Henkels & McCoy, Inc.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be

granted "if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry

of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill*

*Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

## MATERIAL FACTS

On August 26, 2011, Plaintiff Henkels & McCoy, Inc. ("H&M") entered into a Subcontract

Agreement with Defendant P&G Power, LLC ("P&G"). In relevant part, the Subcontract Agreement

provides:

> 1. The Work. Subcontractor shall perform the following Work (hereinafter called the "Work") and shall provide and pay for all labor, materials, tools, equipment and all other necessary facilities for the execution and completion thereof to Contractor's satisfaction. SEE ATTACHMENT A "SCOPE OF WORK"

(Pl. Br., Exh. 1-A, p. 1). The Scope of Work attachment to the Subcontract Agreement provides that

the "Scope of Work" includes, among other things:

> MOBILIZATION - ALL LABOR AND EQUIPMENT COSTS
>
> LABOR – INCLUDING ALL OVERHEADS:
> Provide Labor for Emergency Storm Restoration as directed by Contractor per the request of Principal, on an hourly basis, Hourly Labor rates include all profit, employee benefits and all overhead cost for home office, job site, executive, superintendent, general foreman, safety representatives, small tools, mechanics, licenses, intellectual property, electronic devices, work reporting and billing, equipment movers, clerical, any travel, all contributions for Federal Unemployment insurance, State Unemployment insurance, and Federal Insurance Contribution Act ("payroll taxes"), insurance coverage, and all other costs and charges associated with labor .

*Id*. at p. 9. The Subcontract Agreement requires P&G to defend, indemnify, and hold harmless H&M

for any failure by P&G to perform its contractual obligations under the Subcontract Agreement and

to pay the costs and expenses incurred by H&M as a result of P&G's failure to perform.

When performing work under the Subcontract Agreement, P&G submitted daily time sheets

that captured the hours of each of its workers. Thereafter, P&G invoiced H&M based on the time

sheets. P&G submitted $759,164.00 in total worker wages to H&M in connection with the project

at issue for the dates August 26, 2011, through September 1, 2011, and October 30, 2011, through November 5, 2011.

P&G never entered into a collective bargaining agreement with the local union. However, P&G based its billing rate on a wage rate utility construction agreement from IBEW that was provided to P&G. P&G agrees that the labor rates in the Subcontract Agreement provided, among other things, for payments to the union. *See* (Def. Exh. 2, p. 66-70). Under the IBEW Local Union No. 456 2010-2013 Wage Rates-Utility Construction Agreement, union dues and benefits totaled 69.96% of wages paid, consisting of the following percentages:

| Benefits | |
|---|---|
| Annuity Fund | 15% |
| Pension Fund | 19% |
| Welfare | 28% |
| Supp. Welfare | .5 of 1% |
| NEBF | 3% |
| Total | 65.50 |

| Contractors Contributions | |
|---|---|
| TDB | .7 of 1% |
| N.E.I.F. | .50% |
| N.E.L.C.A.F. | .75% |
| NEAT | 1% |
| NLMCC | $0.01 |
| NJ Safety | 1.5% |

*See* (Def. Br., Exh. 2(F)). Thus, P&G's total union dues liability of 69.96% equaled $531,111.13, based on the submitted wages of $759,164.00.

Viewing the documents in the light most favorable to P&G, P&G paid a total of $158,525.05 in union dues and benefits.[1] During discovery, P&G produced proof of $66,111.80 in payments but

---

[1] In its Statement of Material Facts, H&M contends that two checks written by P&G to IBEW 456 (for $43,820.76 and $5,000.00) never cleared P&G's bank accounts and, thus, should not be considered in the total that P&G paid in union dues and benefits, reducing the amount paid by P&G to $109,704.29. H&M has not proven that the two

contended during its deposition that its financial institution, Peoples Bank, should have records of additional checks totaling at least $250,000. *See* (Pl. Br., Exh. 2, pp. 57, 90-93; Exs. 2(K)-(O), 3(B)-(E)). At the deposition, P&G acknowledged that all payments were made by check from Peoples Bank. Peoples Bank's records, produced in response to an H&M subpoena, reveal checks totaling $158,525.05, which is $372,586.08 less than the $531,111.13 in union dues and benefits liability calculated based on the wages of $759,164.00 that P&G submitted to H&M.

After P&G performed the work for H&M under the Subcontract Agreement, H&M received notice that P&G failed to pay all required union dues for its workers, including a demand email

---

checks did not clear.

H&M attempts to show that check #2300 for $43,820.76 (dated May 25, 2012, and deposited by the payee on June 7, 2012) did not clear P&G's bank account. H&M submits a July 31, 2012 account statement showing that check #92011 for $11,800.00 (dated July 13, 2012, and deposited by the payee on July 18, 2012) cleared on July 19, 2012. H&M also submits the earlier May 31, 2012, and June 30, 2012 statements for the same account. Check #2300 for $43,820.76 is not listed as clearing on either the June 30, 2012 or July 31, 2012 statements, despite having been deposited by the payee on June 7, 2012. Nor does either statement show check #2300 as being returned for insufficient funds. Thus, it appears that H&M is relying on an absence of any reference to check #2300 on these statements to prove that the check did not clear P&G's bank account and, thus, was not actually paid by P&G.

There are two problems. First, H&M has not shown that check #2300 was written on the same account as check #92011. The account numbers at the bottom of both checks are blacked out. And, neither the June 30, 2012 nor the July 31, 2012 statement lists any checks with numbers sequentially close to #2300. Second, even if the checks were written on the same account, H&M has not submitted any account statements for this account after July 31, 2012; although less likely, it is possible that check #2300 cleared on a later date. It is curious that Peoples Bank produced a photocopy of check #2300 from P&G's bank records but that the check is not showing on the account statements submitted by H&M with the instant motion. Viewing the facts in the light most favorable to P&G, H&M has not demonstrated that check #2300 did not clear P&G's account.

H&M also attempts to show that check #8012 for $5,000.00 (dated August 15, 2012) did not clear (H&M incorrectly identifies the check as dated August 5, 2012). Exhibit 4(P) shows that check #8012 for $5,000.00 to IBEW 456 was deposited by the payee on August 24, 2012. Again, the account number on the face of the check is blacked out. H&M suggests that it was written on account ending in 8543. Exhibit Q is an August 31, 2012 statement for an account ending in 8543. A check for $5,000.00 cleared this account on August 27, 2012. Although the check number is not listed on the account statement, there is no evidence to suggest that this $5,000.00 check that cleared on August 27, 2012, is not check #8012, which was deposited by the payee on August 24, 2012. Thus, viewing the facts in the light most favorable to P&G, H&M has not shown that check #8012 for $5,000 did not clear P&G's account.

Regardless of whether P&G in fact paid $158,525.05 or $109,704.29, at least $372,586.08 of the $531,111.13 owed by P&G in union dues and benefits remains outstanding, which is more than the $295,420.13 that H&M paid to settle P&G's obligations. *See infra* note 2. Thus, whether the checks cleared is not material, and the Court considers the two checks in the total paid by P&G.

directly from the union. As a result of P&G's failure to pay union dues for its workers, H&M entered into a Settlement Agreement and General Release with Local Union No. 456 International Brotherhood of Electrical Workers and the Local Union No. 456 Distribution Fund, under which H&M was required to pay $295,420.13 that should have been paid by P&G.[2]

## ANALYSIS

Plaintiff H&M seeks summary judgment in its favor in the amount of $295,420.13 on its breach of contract claim against Defendant P&G. As noted above, P&G has not filed a response.

The choice of law provision in the Subcontract Agreement between H&M and P&G calls for the application of Pennsylvania law. To prove a claim for breach of contract under Pennsylvania law, a plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damages. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (citing *CoreStates Bank, NA v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

First, the existence of a contract and its pertinent terms are undisputed in this case. P&G does not dispute entering into the Subcontract Agreement, which indisputably required P&G to pay all costs associated with its labor. The Subcontract provides:

> 1. The Work. Subcontractor shall perform the following Work (hereinafter called the "Work") and shall provide and pay for all labor, materials, tools, equipment and all

---

[2] H&M calculated the total of all wages for "Foreman Manhours," "Journey Lineman Manhours," and "Line Equipment Operator Manhours" included in the invoices attached to H&M's motion as Exhibits 1(C) and 1(E), and cross checked with the daily time sheets, as $759,164.00. The Court's calculation of these same wages is $771,843.08. The source of the $12,679.08 discrepancy is not apparent. However, H&M's lower calculation does not alter the damages sought on this Motion for Summary Judgment. Using H&M's wage calculation of $759,164.00, P&G owes $531,111.13 in union dues and benefits. The $158,525.05 already paid by P&G plus the $295,420.13 sought by H&M in this lawsuit as reimbursement for its settlement with the union is $453,945.18, which is less than $531,111.13. Because the discrepancy is not material, the Court uses H&M's calculation.

other necessary facilities for the execution and completion thereof to Contractor's satisfaction. SEE ATTACHMENT A "SCOPE OF WORK"

(Pl. Br., Exh. 1-A, p. 1). The Scope of Work attachment provides that the "Scope of Work" includes, among others:

> MOBILIZATION - ALL LABOR AND EQUIPMENT COSTS
>
> LABOR – INCLUDING ALL OVERHEADS:
> Provide Labor for Emergency Storm Restoration as directed by Contractor per the request of Principal, on an hourly basis, Hourly Labor rates include all profit, employee benefits and all overhead cost for home office, job site, executive, superintendent, general foreman, safety representatives, small tools, mechanics, licenses, intellectual property, electronic devices, work reporting and billing, equipment movers, clerical, any travel, all contributions for Federal Unemployment insurance, State Unemployment insurance, and Federal Insurance Contribution Act ("payroll taxes"), insurance coverage, and all other costs and charges associated with labor .

*Id*. at p. 9. Based on this undisputed contract language, a contract existed between H&M and P&G and, pursuant to the terms of the contract, P&G was required to pay all costs associated with its labor.

Second, it is undisputed that P&G breached the contract by failing to pay the union dues and benefits that were part of its labor costs. P&G admitted that it was obligated to pay union dues and benefits listed in the Local Union No. 456 IBEW 2010-1013 Wage Rates-Utility Construction Agreement, which combined equal a rate of 69.96%. P&G submitted wages to H&M totaling $759,164.00. At a rate of 69.96%, P&G owes $531,111.13 in union dues and benefits. However, the most P&G paid in union dues and benefits was $158,525.05.

Third, H&M's damages are undisputed. H&M paid $295,420.13 to the local union pursuant to a settle agreement that should have been paid by P&G under the Subcontract Agreement.

Accordingly, the Court grants summary judgment in favor of Plaintiff H&M and against Defendant P&G in the amount of $295,420.13, plus contractual attorneys' fees to be determined by submission of supplemental evidence following entry of judgment.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Henkels & McCoy, Inc.'s Motion for Summary Judgment Against Defendant P&G Power, LLC [DE 46] and **ORDERS** that Defendant P&G Power, LLC pay Plaintiff Henkles & McCoy, Inc. $295,420.13 as a result of P&G's breach of contract, plus contractual attorneys' fees in an amount to be determined by supplemental evidence following entry of summary judgment. The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Plaintiff Henkles & McCoy, Inc. and against Defendant P&G Power, LLC in the amount of $295,420.13.

So ORDERED this 18th day of February, 2015.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record